Good morning, Your Honor. James Hoyt, on behalf of Marcy McNicol. Mr. Hoyt. On July 25, 2002, Robert Raitano died in Jamaica, leaving his estranged wife, Marcy, and four children, the oldest of which had turned five the day before he died. Robert did not have insurance, and his only real assets, the family's only means of support, were two fishing boats owned through two corporations. Marcy tried at first to continue operating the boats, but eventually realized that she could not make ends meet. In 2004 and 2005, the boats were sold, netting a combined total of approximately $90,000 after commissions and liens. The administrative expenses of the estate were at a minimum of $125,000, using the most conservative figures for both executrix fees and family allowance. If the administrative expenses were clearly greater than the value of the estate, what is the issue? Your Honor, according to the government, exactly as you say, the transfer, she transferred the stock improperly to herself prior to paying the debts to the United States. That's the problem. Isn't that exactly what the statute prohibits? I would argue, in fact, that that's not the case, sir. The way that she transfers the assets is not relevant. The fact that I'm at a loss five years into this process to know exactly how she could have transferred those boats to sell the boats when she needed to sell the boats without violating the statute, I'm still at a loss. Well, first of all, she could have done it within the estate. That's point number one. If she had done it within the estate and we had a normal estate accounting, none of these problems would arise. And she could have gotten an emergency appointment as executrix if she needed to liquidate assets that quickly. Your Honor, there's no evidence that she even transferred the initial company stock to herself. This lady has been a mess for going on 14 years. But there is evidence. We've got an undisputed statement of facts filed in connection with the government's motion. That statement of facts was not opposed under the local rules of the district court. Those are the facts of the case. Your Honor, we presented facts that were contrary to those facts. But you didn't contradict that statement. There was a procedure set up. Your Honor. And you've got to use that procedure, and the local rule is crystal clear. If that statement isn't opposed, those facts aren't conceded. I understand, Your Honor. I mean, true. Understood. With regard to one of them, I think legally it's a nullity. But what we're arguing in effect, Your Honor, all of that conceded, is that it is irrelevant what the process was used. That ultimately the statute, the federal priority statute, requires harm to the government. And that is what's not shown here. There is no derogation of the rights of the government. There is no derogation of their claim. The transfer of stock, which ultimately led to the selling of the fishing boats, if in fact the one transfer occurred, did not lead to the diminution of that estate by one penny. And we're asking that this not be deemed irrelevant, as the government has stated. That the fact that the harm to the government has not been shown, and cannot be shown, can't be irrelevant. But the problem is that at the time of the transfer, it left the estate itself insolvent. Your Honor, the estate was probably already insolvent. This is two and three years after the death of Robert Raitano. These administrative expenses, she went down to Jamaica to retrieve the body within days. While the government has alleged she's transferring, she's in Jamaica retrieving the body. But the estate itself still had assets prior to the transfer. It may not have been sufficient to pay the total expenses of the estate. But it was an asset that was available for consideration prior to her taking unlawful title to it. Your Honor, two and three years after the death of Robert Raitano, the estate was already in the red. The family allowance alone was $54,000. The funeral expense, she had to pay two funeral homes. She had to go to Jamaica to get the body. There's lawyers' fees and accounts fees. The estate is already in the red when these boats are sold. I come back to what Judge Sellier was saying. As I understand your argument, you want to say, look, there were these legitimate administrative expenses that in ordinary course, had she crossed her Ts and dotted her Is, the money would have legitimately gone to them and not been available for the IRS. And that she just made a mistake of paying it to herself first and then took care of the expenses. And so we shouldn't. That's what I understand your argument. Yes, sir. Except she didn't pay it to herself. Ultimately, this is in her control. She put it in her control. The problem is that there's paragraph 13 in the Statement of Material Facts said, she chose not to sell the two fishing vessels because she wanted to maintain the lucrative income that the vessels were generating and use that income to fund her family's lifestyle. And she hoped the IRS would not seek to collect the liabilities and that the statute of limitations period would expire. And when asked whether there was any opposition to that paragraph, there was no. Your Honor. Your client conceded that paragraph accurately states the facts. But, Your Honor, and I've represented that, Your Honor. She did try to make a go of the boats. She did try to maintain. This is a stay-at-home housewife whose husband had maintained a lucrative income by running these two fishing boats. She thought she could do it. She thought she could actually maintain that income, but she couldn't. And when she realized that she couldn't, she made arrangements to sell those boats. And she was maybe advised, improperly advised, poorly advised to put the title in her name before sale. You're talking about this case as if the violation occurred at the time of sale. It didn't. The violation occurred when she transferred the stock from her husband's name into hers. She, at that point, converted assets of the estate. And she did it according to the undisputed facts and according to what you've just admitted for the purpose of attempting to make a go of the fishing venture and to support her family. Perfectly laudable purposes. All right? That didn't work out. But that contravenes what her claim was to the district court, that she made this transfer to reimburse her for estate expenses, which hadn't been incurred as of the time of the transfer. How many estate expenses? One of the items you list in your brief is a lawyer for $19,000, under $200,000 or so estate. What evidence is there in the record that that $19,000 was a legitimate administrative expense? Your Honor, I don't know what would be in the record, but I know we've used the bills. We don't care what's not in the record. Isn't it your job to know what's in the record? The bills are in the record, Your Honor. Okay, but to establish the legitimate expenses, so you would point us to some bills, and we have to assume that that $19,000 legal fee was for administrative expenses of this estate? Your Honor, I don't know exactly what those – my understanding is that there were two or three lawyers involved in the administration of this estate and that we received the bills from Marcy, and she represented those to be in connection with the estate. But don't you see that doesn't – to show that something's a proper administrative expense, you just don't need to say I've got this bill from a lawyer, period. You need to show what the expense – what the lawyer did, that it was a proper administrative expense. I couldn't find that anywhere in the record. Even if we were to accept your argument that those were proper expenses, and so what if they went the wrong route? Well, Your Honor, I'd be happy to go back to the district court and have an argument of what, in fact, the government's damages were, because if we're talking now about – But see, the problem is that's past. That time is past. But if we're talking about the difference between what the administrative expenses were, and there's an argument regarding that there's an administrative expense that might be excessive, I'd be happy to concede that. What I'm asking the court now to recognize is the intention of the federal priority statute is to punish fiduciaries who pay the debts of an estate out of priority. And that out of priority cannot be applied if the administrative expenses of the estate, which are accepted by the government in the firm manual, are, in fact, the only things that are being paid by the estate. They are, in fact, the only things, the administrative expenses. We just ask that that be considered. Thank you. Thank you. May it please the court. I'm Curtis Pett, representing the United States. The party seeking to avoid liability under Section 3713B bears the burden of proving that the statute does not apply. Ms. McNichol does not and cannot argue that the elements of liability under the statute are not present here. Instead, she argues that she is being improperly penalized for applying assets of the estate to satisfy its administrative expenses. This argument suffers from two fundamental and fatal flaws. First, that's not what happened. She did not apply assets of the estate to satisfy its administrative expenses. Instead, she took the property for herself without making any attempt to pay any part of the tax liabilities that she knew were outstanding. A liability attached at the time she made those transfers, and what happened to the property after that fact has no bearing on the liability. In addition, her assertions of the payment of administrative expenses are vague and conclusory. The party opposing summary judgment is required to come forth with competent and admissible evidence. Her vague assertions don't satisfy that requirement, and the documentary evidence that she offers was properly disregarded as inadmissible hearsay. It was offered to prove the truth of the matters asserted therein that various payments were made, and Ms. McNichol made no attempt to show that the business records exception was applicable by providing evidence of the custodian of the records, that they were authentic, and they laid no foundation for the admission of any of this evidence. Counsel, can I take a crack at reformulating your argument, or reformulating her argument as I understand it? Because I think that she is, in effect, asking us, saying that the statutory language permits an equitable exception if, for example, a fiduciary does things in a kind of awkward way, takes assets out of the estate, and uses those assets to either pay or reimburse herself for paying expenses that would have priority to the federal tax lien. Now, there's a legal question as to whether your formalistic interpretation of the statute is correct and whether the statute admits of an equitable exception, but I am struggling with why we should even answer that question, because I don't think that there's anything in the record that shows that this property, when it was transferred, was either used for reimbursement of legitimate administrative expenses or for the payment of legitimate administrative expenses. Am I missing something? No, Your Honor, I think that's exactly the point. It's arguing whether there's a legal principle as to this reimbursement theory is irrelevant when there's no evidence to support the fact that this arrangement existed or that there's no admissible evidence of administrative expenses that were paid either before or after the transfer. So in these circumstances, summary judgment in favor of the government was proper. So that concludes my comments, unless the Court has any further questions. Thank you. Thank you. Thank you.